UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | No. 2:18-CR-34(13) |
| ) | |
| BRANDON LEE ALEXANDER ) | |

ORDER

Before the Court is the Report and Recommendation (the "R&R") of United States Magistrate Judge Clifton Corker filed on December 21, 2018, recommending that this Court deny three of defendant Brandon Lee Alexander's motions to suppress, and grant five of defendant's motions to suppress as moot. [Doc. 356]. On December 31, 2018 defendant filed his objections to the R&R. [Doc. 367]. The government responded. [Doc. 389]. The matter is ripe for review. For the following reasons, the Court ADOPTS the Magistrate Judge's Report, ADOPTS the Recommendation, GRANTS motion to suppress numbers One, Five, Six, Seven and Eight, [Docs. 138, 146. 148, 310, 312], as moot, and DENIES motion to suppress numbers Two, Three and Four. [Docs. 140, 142, 144].

I. Procedural History

On February 13, 2018, a federal grand jury returned an indictment against defendant charging him with possession with intent to distribute five grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(B), possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), all arising from an April 24, 2017 traffic stop. [Doc. 3 at 9-10]. Defendant was further charged with possession with

the intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A) arising from a May 3, 2017 traffic stop. [*Id.* at 10].

Defendant filed eight motions to suppress. [Docs. 138-149, 310-313]. The Magistrate Judge held evidentiary hearings on December 14, 2018 and December 19, 2018[1]. [Doc. 411]. At the outset of the first hearing, the Magistrate Judge acknowledged and the parties agreed that defendant's first, fifth, sixth, seventh, and eighth motions to suppress were moot points, because either no evidence was found as a result of the search or the count was dismissed. [*Id.* at 4-6].

At the suppression hearing, the government presented Detective Pete Shockley, narcotics and vice detective for the Morristown Police Department ("MPD"), as a witness. [*Id.* at 16-91]. Defendant called three witnesses: MPD officer Richard Matthew Webb, Detective Shockley, and L.R., defendant's teenage daughter. Defendant also testified on his behalf. [*Id.* at 103-47].

On December 21, 2018, the Magistrate Judge filed his Report, recommending defendant's remaining motions to dismiss be denied. [Doc. 356]. Defendant filed timely objections to the Magistrate Judge's R&R, and the government responded. [Docs. 367; 389].

II. Background

This case arises from two separate traffic stops, the first on April 24, 2017 and the second on May 3, 2017. Prior to both traffic stops, defendant had been monitored by MPD narcotics and vice division detectives under suspicion for selling methamphetamine as part of an ongoing investigation with a confidential informant. [Doc. 411 at 17-18]. As part of that investigation, MPD Detectives Shockley and Jason Young ran a criminal history check on defendant. [*Id.* at 19-20]. The criminal history background check revealed that defendant's driver's license was

---

[1] The suppression hearing was held on two dates to accommodate defendant's witness L.R., a minor, who failed to appear to the initial hearing. [Doc. 411 at 14].

suspended. The check also provided the law enforcement officers with relevant information regarding defendant's lack of legitimate employment and provided any photographs of defendant on file. [*Id.*].

**April 24, 2017 Traffic Stop**

On April 24, 2017, around 8:00 p.m., MPD detectives conducted undercover surveillance of defendant's mother's residence at 712 Baker Street in Morristown, Tennessee, as part of an ongoing narcotics investigation. [*Id.* at 20, 23, 107]. While watching the property for drug traffic, MPD detectives recognized defendant from the criminal history check photographs and watched him come out of the residence, get in a SUV vehicle and proceed to drive down the road. [*Id.* at 21-22]. At the evidentiary hearing, defendant stated he was driving to his daughter's residence at 614 Brown Avenue in Morristown with stereo equipment for her car. [*Id.* at 107, 154].

After following defendant approximately half a mile, MPD Detectives Shockley and Young performed a traffic stop of the 2004 Ford Expedition operated by defendant on Brown Avenue. [*Id.* at 24, 130]. Defendant stopped and parked the vehicle he was driving facing the wrong direction of the traffic flow in front of a residence partly on gravel between the road and the yard of 614 Brown Avenue. [*Id.* at 24-25].

Upon approaching the passenger side of the vehicle, Detective Shockley noticed a First Tennessee Bank leather money bag with a zipper on top in the front passenger seat that appeared to be bulging. From its appearance, Detective Shockley testified it seemed to "have a large quantity of money in it." [*Id.* at 26, 28; Ex. 2]. Detective Shockley also noticed a "large safe in the back seat behind the passenger's seat" facing the front of the vehicle within arm's reach of the driver. [Doc. 411 at 29-30].

Detective Shockley inquired why defendant was driving with a suspended license. [*Id.* at 32, 112]. Defendant testified that he replied that his driver's license was not suspended and stated he was going to see his daughter. [*Id.* at 32; 112]. The detectives ordered defendant out of the vehicle. [*Id.* at 32, 113].

Detective Shockley then asked defendant if the detectives could search the vehicle. [*Id.* at 33]. Defendant replied that the officers could not search the vehicle, because "it wasn't in [his] name." [*Id.* at 33, 113, 117-18]. Detective Shockley told defendant he could call for a canine unit, to which defendant replied that the officers could go ahead and search the vehicle. [*Id.* at 33].

The detectives placed defendant in custody for driving on a suspended license and subsequently searched and impounded the vehicle defendant was driving. [*Id.* at 113]. While handcuffing defendant, Detective Shockley asked if defendant had any contraband on his person. [*Id.* at 36]. Although defendant initially stated he did not have any illegal substances on his person, defendant then motioned to his waistband, where Detective Shockley found approximately thirty-six grams of methamphetamine in a clear plastic bag. [*Id.* at 36-38]. At the hearing, defendant contested this account, and denied motioning to his waistband. Defendant also disputes the quantity stating that he had about twenty-one grams of methamphetamine on his person for his own use instead of the thirty-six grams as alleged by law enforcement. [*Id.* at 114, 133]. Defendant was subsequently arrested and transported to Hamblen County Jail. [*Id.* at 44].

The vehicle defendant was driving was parked facing oncoming traffic on a public roadway in front of 614 Baker Street. [*Id.* at 39]. Defendant denies that the parked vehicle was interfering with traffic and contends the vehicle was entirely parked in the front gravel parking lot of the residence. [*Id.* at 115, 117]. Defendant's daughter corroborated Detective Shockley's testimony that the vehicle could not entirely fit on the gravel shoulder and was also blocking part of the road.

[*Id.* at 167]. In impounding defendant's vehicle, Detective Shockley testified he was following MPD's Standard Operating Procedure requiring officers to tow unattended vehicles that could present a traffic hazard. [*Id.*].

Before towing the vehicle, Detective Shockley testified he was following MPD standard operating procedure by inventorying the contents of value in the vehicle and ensuring there were no weapons or explosive devices. [*Id.* at 39-41]. Detectives Shockley and Young proceeded to search the vehicle starting from the cab and continuing to the trunk. [*Id.* at 34, 41]. During the search the officers found in the glove compartment a small plastic bag with methamphetamine residue and a set of digital scales that had methamphetamine residue all over them. [*Id.* at 34-35; 41]. As part of the search, the detectives looked inside the money bag and discovered $11,560.00 in cash. [*Id.* at 35]. Detective Shockley then asked defendant the combination to the safe in the backseat. [*Id.*]. Defendant replied that he did not know the combination and denied ownership of the safe. [*Id.* at 36, 134]. The detectives took the safe as evidence and it was placed in a secure evidence locker in MPD custody. [*Id.* at 46].

The same day, Detectives Shockley and Young prepared the Vehicle Impoundment Form for defendant's vehicle. [Ex. 3]. The Vehicle Impoundment Form lists all the "[a]rticles in vehicle" under the appropriate section. [*Id.*]. The articles listed include: a Samsung flip phone, a "union safe," tools, and various stereo equipment. [*Id.*].

On April 25, 2017, Detective Shockley swore an affidavit in state court for a search warrant for the keypad union safe found in the vehicle. [Ex. 4; Doc. 411 at 81]. Detective Shockley, as affiant, stated that during the course of the April 24, 2017 traffic stop MPD detectives found a black union keypad safe, which defendant denied ownership of and denied knowing the number combination to open it. [Ex. 4 ¶ 3]. Detective Shockley further stated MPD detectives "discovered

$11,560.00 in U.S. currency . . . 35 grams of crystal meth . . . digital scales and some pills" inside the vehicle and on defendant during the traffic stop. [Ex. 4 ¶ 2]. Detective Shockley specified that based on his experience, training and the above information, he "believe[d] the aforementioned facts give probable cause to believe that drugs, U.S. currency, weapons, and/or drug paraphernalia of an unlawful nature [were] located inside the safe[.]" [Ex. 4 ¶ 4]. Based on the proofs presented by Detective Shockley, Hamblen County General Sessions Judge Doug Collins found probable cause, and signed the search warrant ordering the search of the interior and the contents of the safe. [Ex. 4 at 3]. Detective Shockley testified he personally gave defendant a copy of the search warrant; however, defendant denies being served. [Doc. 411 at 48-49; 81, 118].

After executing the search warrant, the detectives found a loaded .22 caliber handgun, $113.29 in coins, legal paperwork with defendant's name and sports cards. [*Id.* at 46-47; Ex. 4 at 4-5]. The officers then filed the weapon into evidence and used the new evidence to obtain a warrant for defendant charging him with being a convicted felon in possession of a firearm and possession of a firearm during the commission of a felony. [Doc. 411 at 47, 50, 82].

**May 3, 2017 Traffic Stop**

After obtaining the April 25, 2017 warrant for defendant's arrest, Detectives Shockley and Young continued conducting surveillance on 712 Baker Street. [*Id.* at 50, 82]. On May 3, 2017 Detective Young was in a surveillance vehicle watching the residence when he saw defendant leave the residence alone, enter a 1989 Lincoln Town car, and drive away. [*Id.* at 57, 82, 121]. Immediately, Detective Young alterted Detectives Shockley and Hickey, who were in another vehicle nearby. [*Id.*]. The detectives then called for Sergeant Brad Rice of the canine unit and asked him to perform a traffic stop. [*Id.*].

After following defendant's vehicle for approximately three-quarters of a mile, Sergeant Rice initiated a traffic stop. Defendant stopped the vehicle he was driving in the middle of a public roadway. [*Id.* at 52-53, 57]. Detectives Shockley and Hickey stopped their vehicle behind Rice's vehicle. [*Id.* at 51, 53]. Detective Shockley approached defendant's vehicle and informed defendant that he would be arrested with firearm possession charges from the new warrant and would also be charged with driving on a suspended license. [*Id.* 53, 122]. The detectives proceeded to handcuff defendant. [*Id.* at 83, 122].

Detective Shockley asked to search defendant's vehicle, and according to Detective Shockley's testimony, defendant granted the officers permission to search. [*Id.* at 54, 84]. Defendant claims he did not consent or refuse the search. [*Id.* at 123]. Detective Shockley found a WD-40 can laying in the front passenger side floor, which, when he picked it up, "felt overly heavy." [*Id.* at 55]. After shaking the can and noticing its contents did not "swish like liquid swishes," he removed the bottom of the can to reveal a false bottom. The container was packed with a bag of approximately one hundred thirteen grams of methamphetamine. [*Id.* at 55-56]. Defendant claimed he was unaware of the drugs in the vehicle and maintains the drugs were not his and he was set up. [*Id.* at 124, 144, 146]. The MPD detectives then seized and impounded the vehicle, and defendant was transported to jail. [*Id.* at 172].

III. <u>Legal Standard</u>

Pursuant to Federal Rule of Criminal Procedure 59, "[a] district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence." Fed. R. Crim. P. 59(b)(1). Within fourteen days after being served with a copy of the report and recommendation on a motion to suppress, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "A judge of the court shall make a *de*

*novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also* Fed. R. Crim. P. 59(b)(3).

This Court must conduct a de novo review of those portions of the Report and Recommendation to which objection is made and may accept, reject or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). "The district court is not required to review -under a *de novo* or any other standard – 'any issue that is not the subject of an objection.'" *Brown v. Bd. Of Educ.*, 47 F. Supp. 665, 674 (W.D. Tenn. 2014) (emphasis added) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). After reviewing the evidence, this Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1).

IV.  Discussion

**A. Objections A & B**

Defendant objects to the Magistrate Judge's two legal conclusions in his findings and recommendation as to defendant's second and third motions to suppress. Specifically, defendant objects to the Magistrate Judge's conclusion that the April 24, 2017 and the May 3, 2017 inventory vehicle searches were constitutionally permissible warrantless searches. [Doc. 356 at 9-11].

"[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012). Such searches "may only be conducted if police have 'lawfully tak[en] custody of a vehicle.'" *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)). "Inventory searches serve to protect an

owner's property while it is in the custody of the police, to insure against claims of lost, stole, or vandalized property, and to guard the police from danger." *Id.* at 650-51 (internal quotation marks omitted). An inventory search of a vehicle must be conducted "according to standard police procedures" and may not be undertaken "for purposes of investigation." *Lumpkin*, 159 F.3d at 987. "[O]fficers are required to follow 'standardized criteria . . . or established routines to assure that inventory searches are not 'a ruse for a general rummaging in order to discover incriminating evidence.'" *United States v. Hockenberry*, 730 F.3d 645, 659 (6th Cir. 2013) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). It is the government's burden to show by a preponderance of the evidence that the inventory exception applies. *See United States v. Torbert*, 207 F. Supp. 3d 808, 818 (S.D. Ohio 2016); *United States v. Richards*, 147 F. Supp. 2d 786, 788-89 (E.D. Mich. 2001).

Defendant objects to the Magistrate Judge's legal conclusion that the April 24, 2017 and May 3, 2017 vehicle inventory searches were constitutionally permissible. [Doc. 367 at 5]. Defendant contends the government failed to meet its burden in showing that the two inventory searches were conducted pursuant to standard MPD protocol and policy. [*Id.* at 7]. More particularly, defendant argues Detective Shockley's testimony and MPD's Standard Operation Procedures General Order 500.24 are insufficient to show MPD had an established inventory search policy of impounded vehicles. [*Id.* at 5-6]. Defendant maintains that without the MPD's adoption of any standard procedures for conducting an inventory search and that the officers conducted the searches in accordance with any standardized procedure, evidence from the inventory searches must be suppressed. [*Id.* at 8-9].

The Magistrate Judge found Detective Shockley's testimony of the MPD's departmental policy of impounded vehicles and MPD Standard Operation Procedures General Order 500.24 sufficient to determine that MPD had a standard inventory search procedure. Further, the Magistrate Judge

concluded that based on Detective Shockley's testimony the MPD detectives followed MPD's "established routine" in conducting the two vehicle inventory searches. [Doc. 356 at 8-9].

A general written inventory policy does not grant officers carte blanche when conducting a search, rather, it must be sufficiently tailored to only procedure an inventory. *Jackson*, 682 F.3d at 455 (citing *United States v. Tackett*, 486 F.3d 230, 233 (6th Cir. 2007)). In conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy, nonetheless, officers may exercise some judgment based on concerns related to the purposes of the inventory search. *Hockenberry*, 730 F.3d at 659 (quoting *Jackson*, 682 F.3d at 455).

MPD Standard Operation Procedures General Order 500.24 was admitted into evidence without any objections. [Doc. 411 at 42]. MPD's procedure states, in relevant part, as follows:

> 4. Vehicles shall be towed under the following circumstances:
>
> a. Abandoned or disabled vehicles that have been left unattended in a designated lane of traffic on a public street or roadway.
> b. Abandoned or disabled vehicles that create a traffic hazard.
> c. Abandoned or disabled vehicle that is blocking any alley or city right of way
>
> . . . .
>
> 6. Documentation of towed vehicles
>
> > a. When a Department member causes a vehicle to be towed, that member shall completely fill out a Department Vehicle Impoundment Form.
> > . . .
> > (3) A vehicle inventory shall be conducted in all cases where a Vehicle Impoundment Form is required.
>
> [Ex.1 at 14-15].

Further, the Standard Operating Procedure mandates it "shall be the responsibility of the officers to adhere to policy set forth in this general order and for participating wrecker services to adhere to the following standards and regulations." [Ex. 1 at 1].

Here, as an initial matter, Detective Shockley's decision to impound the vehicle was reasonable under the circumstances. *See United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) ("The Fourth Amendment permits impoundment decisions . . . that are objectively justifiable . . . regardless of an officer's subjective intent." Furthermore, an impoundment decision will not be impermissible simply because alternatives to impoundment might exist.). In both instances, the detectives pulled over the vehicles on a public street, and the vehicles remained partially on the public roadway while parked during the traffic stops. The criminal history check and the information check revealed that defendant, the driver of the vehicles, was operating under a suspended license. At the time of both traffic stops, there were no passengers in the vehicles to whom the detectives could have released the vehicles. Considering these factors, Detective Shockley acted within his discretion in deciding to tow the vehicles on April 24, 2017 and May 3, 2017, because the vehicles presented a traffic hazard parked partially in the roadway. As traffic hazards and unattended vehicles, impounding the vehicles was appropriate under department policy. [Doc. 411 at 89]. Moreover, law enforcement officers are not required to allow defendants an alternative method of securing the vehicle. *See United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994) ("[n]othing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory.").

Detective Shockley explicitly testified that he was required to follow MPD policy that vehicles shall not be left unattended on the side of the road for an extended period of time because it creates a road hazard, and MPD policy mandates unattended vehicles to be impounded. [Doc. 411 at 89]. Under such circumstances, Detective Shockley stated that it was MPD's standard operating procedure to do a full search of any vehicle taken into custody, and accordingly he was mandated to complete a Vehicle Impoundment Form and perform a search noting items of value. [*Id.* at 87-

90]. "Whether a police department maintains a written [inventory] policy is not determinative, where testimony establishes the existence and contours of the policy." *Tackett*, 486 F.3d at 233 (citations omitted).

Given the above circumstances, the detective's performance of an inventory search was performed subject to MPD policy both on April 24, 2017 and on May 3, 2017. The detectives had probable cause to stop the vehicle and made a reasonable decision to impound the vehicle. According to MPD procedure, it was proper to conduct an inventory search following these series of events. In conducting the inventory searches, the MPD detectives followed the proper MPD guidelines.

Defendant has not shown that Detective Shockley departed from the MPD standard procedure in conducting the inventory searches on April 24, 2017 and May 3, 2017. Accordingly, these objections are OVERRULED.

**B. Objections C & D**

Defendant objects to the Magistrate Judge's finding that MPD detectives actually conducted inventory searches on April 24, 2017 and on May 3, 2017. [Doc. 367 at 9-11]. Defendant argues "there is no such evidence that such an inventory search was actually conducted on either date" as reflected in the record from the evidentiary hearing. [*Id.* at 10].

In his objection, defendant fails to consider the completed MPD "VEHICLE IMPOUNDMENT FORM" entered into evidence as defendant's exhibit three on December 14, 2018. [Ex. 3; Doc. 411 at 74]. MPD Detectives Young and Shockley completed the form at 20:52 on April 24, 2017. [Ex. 3]. As part of the section "[a]rticles in vehicle," the detectives listed precisely the contents found within the vehicle. The inventory listed various speakers, amps, and related sound equipment, along with a Samsung flip phone, a union safe, miscellaneous clothing,

and miscellaneous tools. [*Id.*]. Further, Detective Shockley testified that if an officer completes a Vehicle Impoundment Form, the officer has to inventory the vehicle. [Doc. 411 at 75].

As to the May 3, 2017 traffic stop and subsequent vehicle search, Detective Shockley's testimony confirms an inventory search occurred. [*Id.* at 86]. At the evidentiary hearing, Detective Shockley recounted the events of the traffic stop, testified in detail to searching the vehicle and finding a can with a false bottom containing methamphetamine. In his R&R the Magistrate Judge found Detective Shockley's testimony credible and sufficient to clarify that an inventory search was conducted on the vehicle defendant was driving at the time of the May 3, 2017 traffic stop. The Court finds Detective Shockley's testimony sufficient to conclude that an inventory search actually occurred prior to the impoundment of the vehicle defendant was operating on May 3, 2017. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980) (a district court is not required to rehear witnesses whose testimony has been evaluated by the Magistrate Judge.); *see also United States v. Irorere*, 69 Fed. Appx. 231, 236 (6th Cir. 2003) (the Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference). Accordingly, these factual objections are OVERRULED.

**C. Objection E**

Defendant objects to the Magistrate Judge's finding that the MPD detectives lawfully seized the locked safe during the April 24, 2017 traffic stop. [Doc. 367 at 11-12]. Defendant specifically argues the MPD detectives had no legal right to take the safe into their possession because the inventory search was invalid. [*Id.* at 11]

As previously discussed, the April 24, 2017 vehicle search was a permissible warrantless search under the inventory search exception, because it was conducted following established police

guidelines. During the inventory search, the officers listed the safe found in the backseat of the vehicle on the Vehicle Impoundment Form. [Ex. 3]. The officers retained the safe.

Although officers in conducting inventory searches do not enjoy their accustomed discretion, they are required to follow standardized criteria or established routine. *Hockenberry*, 730 F.3d at 659. Here, Detectives Shockley and Young followed MPD standard procedure by searching the car and inventorying all the items of value. Although law enforcement officers in conducting inventory searches follow precise guidelines, "[n]onetheless, officers may exercise some judgment based on concerns related to the purposes of an inventory search; for example, they may decide to open particular containers if they cannot determine the contents." *Jackson*, 682 F.3d at 455 (quoting *Tackett*, 486 F.3d at 232); *see also Hockenberry*, 730 F.3d at 659. "[T]he fact that an officer suspects that contraband may be found does not defeat an otherwise proper inventory search." *Lumpkin*, 159 F.3d at 987. In this particular matter, the detectives did not open or attempt to open the safe without first obtaining a search warrant. Detective Shockley completed an application for a search warrant and affidavit to obtain a permission to search the safe found in defendant's vehicle during the traffic stop. MPD detectives properly retained the safe following the valid inventory search; as such defendant's objection is OVERRRULED.

**D. Objections F & G**

Lastly, defendant objects to the Magistrate Judge's finding that evidence found from the April 24, 2017 traffic stop could be used in the application for the search warrant for the locked safe when the evidence was the product of an unconstitutional search. [Doc. 367 at 12-14]. Specifically, defendant contends there was insufficient probable cause for the issuance of the search warrant absent the inclusion of the evidence that was fruit of the poisonous tree. [*Id.* at 12]. Defendant maintains the entry into a closed container was unnecessary and constitutionally

impermissible based on the contents of the inventory search: currency in a zipped and closed bag. [*Id.*]. Further, defendant argues the other items used for the search warrant application including the digital scales, pills and methamphetamine were obtained as the direct result of an illegal search, and under the exclusionary rule are not permissible for use in the application for the search warrant. [*Id.*].

The Magistrate Judge found probable cause was established and the search warrant was properly issued by the state judge. [Doc. 356 at 14].

"The Fourth Amendment mandates that a search warrant may only be issued upon a showing of probable cause." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (citing U.S. Const. Amend. IV). "In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that 'indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)); *see also Illinois v. Gates*, 462 U.S. 213, 230 (1983) (the issuing judge must answer "the commonsense practical question whether there is 'probable cause to believe that contraband or evidence is located in a particular place.'"). Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). When a specific location is to be searched, "the affidavit must establish 'a nexus between the place to be searched and the evidence to be sought.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*)). In determining whether probable cause exists, a reviewing court "is limited to the information presented in the

four corners of the affidavit." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (citation omitted).

In the supporting affidavit, Detective Shockley, recounted the related events and then the discoveries at the traffic stop, including: $11,560.00 in U.S. currency, 35 grams of methamphetamine, digital scales and some pills. [Ex. 4]. He also indicated defendant was charged with drug possession with intent to sell, possession of drug paraphernalia and possession of a Schedule II controlled substance. In the affidavit, Detective Shockley averred that: he has been a law enforcement officer assigned to conduct narcotics investigations for seventeen years; he has received specialized training in narcotics/drug investigations from specialized schools totaling more than five-hundred hours; he has participated in at least 1500 narcotics/drug investigations including investigations resulting in the execution of search warrants; and as a result of his training and experience, he "believe[d] that drugs, U.S. currency, weapons, and/or drug paraphernalia of an unlawful nature [were] located inside the safe[.]" [Ex. 4 at 2].

The undersigned was not the issuing judge and, therefore, review of the search warrant is limited. The issuing judge's determination of probable cause is afforded great deference by the reviewing court, and "[c]onsequently a magistrate's decision to grant a search warrant should only be reversed if it was arbitrarily exercised." *United States v. Greene*, 250 F.3d 471, 478-79 (6th Cir. 2001) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2001); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir.1993)). Furthermore, "courts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner," and consider the "totality of the circumstances" and not line by line scrutiny. *Thomas*, 605 F.3d at 307.

Based on the totality of the circumstances, the affidavit in support of the search warrant provided the requisite "fair probability" that evidence of a crime would be found in the safe based

upon the listed illegal paraphernalia found during the permissible inventory search of the vehicle and during the lawful April 24, 2017 traffic stop. Defendant's objections is therefore OVERRULED.

V. Conclusion

Defendant does not object to the Magistrate Judge's recommendations that defendant's motions to suppress numbers one, five, six, seven, and eight be granted as moot, [Doc. 356 at 6], and neither does the government. The Magistrate Judge's Report and Recommendation as to the aforementioned motions are **ACCEPTED** and **ADOPTED**. [Docs. 138, 148, 310, 312].

Having reviewed *de novo* the legal conclusions to which defendant objects, the court **ADOPTS** the Magistrate Judge's factual findings and **ADOPTS** the Magistrate Judge's conclusions of law, and **DENIES** defendant's motions to suppress numbers two, three, and four. [Docs. 140, 142, 144].

So ordered.

ENTER:

                                                       s/J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE