UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-34(13) |
| | ) | |
| BRANDON LEE ALEXANDER | ) | |

MEMORANDUM OPINON AND ORDER

The defendant, through counsel, filed a Motion for New Trial, or in the Alternative, For a Judgment of Acquittal. [Doc. 524]. The government has responded in opposition. [Doc. 615]. The matter is now ripe for review. For the reasons that follow, the defendant's motion is DENIED.

## I. Background

To review briefly, defendant was charged and tried with one count of possession with intent to distribute five grams or more of methamphetamine, one count of possession of a firearm in furtherance of a drug trafficking crime, one count of possession with intent to distribute fifty grams or more of methamphetamine, and one count of felon in possession of a firearm[1]. On February 13, 2019, at the close of the government's case-in-chief, defendant made an oral motion for a judgment of acquittal which the Court denied. That same day, the jury convicted defendant of all counts. [Doc. 518]. Defendant subsequently filed this motion.

## II. Analysis

---

[1] The charges stem from two separate traffic stops, the first on April 24, 2017 and the second on May 3, 2017. The Court has previously recited the facts underlying defendant's convictions in its January 22, 2019 Opinion, [Doc. 461], and in its February 11, 2019 Opinion, [Doc. 461]. Because the Court presumes the parties' familiarity with the facts, it does not repeat them here.

1

### A. Rule 33 Motions

Federal Rule of Criminal Procedure 33(a) states that a district judge may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the district court may weigh the evidence and assess the credibility of the witnesses. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) ("It has often been said that [the trial judge] sits as a thirteenth juror" when considering a Rule 33 motion.). Nonetheless, a defendant arguing that the verdict "was against the manifest weight of the evidence" must clear a high bar. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (Rule 33 motions are granted only in the "extraordinary circumstance where the evidence preponderates heavily against the verdict."). Courts have also interpreted Rule 33's broad "interest of justice" language to warrant new trials in a host of other circumstances. *See United States v. Griffin*, No. 15-CR-1-ART, 2015 WL 13358334, at * 1 (E.D. Ky. Apr. 29, 2015) (collecting cases). Ultimately, however, a new trial is a disfavored remedy, to be granted "with great caution." *United States v. Fritts*, 557 Fed. App'x 476, 479 (6th Cir. 2014) (citation omitted). The defendant bears the burden of proving that a new trial is warranted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). Defendant briefly sets forth a slew of proposed new trial bases. The Court, for the following reasons, rejects each.

**1. The Court Erred in Allowing the Introduction of Evidence of the Cash, Safe, Methamphetamine, and WD-40 Can**

Defendant argues the Court should find the verdict against the manifest weight of the evidence based on essentially the same ground the Court rejected in its adoption of the Magistrate Judge's report and recommendation, recommending the Court to deny defendant's motions to suppress numbers Two, Three, and Four. [Docs. 140, 142, 144, 356, 461, 524]. The government

counters that the Court properly allowed the introduction of the evidence collected from the traffic stops. [Doc. 615 at 2-5].

Defendant's entire argument in support of his motion for a new trial is:

1. The Court erred in allowing the introduction into evidence of the cash money (Government Exhibits Nos. 2 and 5) as well as the safe and contents of the safe (Government Exhibits Nos. 6, 7, 8 and 9), and instead adopting the Report and Recommendation of the Magistrate Judge [Doc. 356] denying the Defendant's Motions to Suppress Nos. 2 and 3 [Docs. 140 and 142] after denying the Defendant's Objections to said Report and Recommendation in the Order entered on January 22, 2019 [Doc. 461].

2. The Court erred in allowing the introducing into evidence of the WD-40 can and methamphetamine taken therefrom (Government Exhibits Nos. 10, 11, 12, 13, 14 and 15-b), and instead adopting the Report and Recommendation of the Magistrate Judge [Doc. 356] denying the Defendant's Motion to Suppress No. 4 [Doc. 144] after denying the Defendant's Objections to said Report and Recommendations in the Order entered on January 22, 2019 [Doc. 461].

[Doc. 524 at 1-2]. The Court finds the defendant has failed to meet his burden of proving a new trial is warranted. Defendant has not identified how and why the alleged errors made by the Court with respect to the introduction of evidence, the suppression motions he filed, and the objections he made require a new trial. Defendant does not identify any evidence that would undermine the ability of the jury to find defendant guilty beyond a reasonable doubt. Defendant does not explain how the verdict was "against the manifest weight of the evidence." This is not a case in which extraordinary circumstances and the evidence preponderates heavily against the verdicts. *See Hughes*, 505 F.3d at 593. The Court concludes that the interests of justice do not require a new trial for defendant, nor were the jury's guilty verdicts against the manifest weight of the evidence. *See* Fed. R. Crim. P. 33(a).

**2. The Court Erred by Denying Defendant's Special Jury Instruction**

Defendant argues the Court erred by denying defendant's request for a special jury instruction[2], [Doc. 495], because the evidence presented at trial warranted the jury to make a negative inference, as to audio and video evidence of defendant's traffic stops had been destroyed by the MPD. [Doc. 524 at 3]. The government contends the Court properly denied defendant's jury instruction request. [Doc. 615 at 10-12].

A trial court has broad discretion in drafting jury instructions, and does not abuse its discretion unless the jury charge fails to accurately reflect the law. *United States v. Leman*, 2013 WL 1856123, at *4 (E.D. Ky. Apr. 30, 2013) (citing *United States v. Ross*, 502 F.3d 521, 528 (6th Cir. 2007); *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001)). To satisfy his burden to show that the district court abused its discretion in its choice of jury instructions, a defendant must show that "the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Freeman*, 299 Fed. App'x 556, 558 (6th Cir. 2008) (citing *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)). "No single provision of the jury charge may be viewed in isolation, rather, the charge must be considered as a whole." *Beaty*, 245 F.3d at 621-22 (citing *United States v. Lee*, 991 F.2d 343, 350 (6th Cir. 1993)). An omission or an incomplete instruction is even less likely to be prejudicial than an overt misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977).

---

[2]

> During the course of this trial you have heard evidence that during the arrests of Mr. Alexander and the search of his vehicle by officers with the Morristown Police Department on both April 24, 2017 and May 3, 2017, those events were recorded on audio and video recording devices used by some of those officers, but those recordings have since been destroyed. You may infer from the Government's failure to preserve those audio and video recordings, or the fact that they were purged or destroyed and are no longer available, that the missing audio and video recordings were relevant to the case and that they were favorable to Mr. Alexander. You are not required to make this inference, however, and you must consider any rebuttal evidence that has been offered by the Government with regard to this issue. Whether you ultimately choose to make the inference is your decision as the finder of fact.

[Doc. 495 at 2].

At the charge conference, the Court, from the bench, denied defendant's request for a special spoliation charge. The Court found that defendant's reliance on Third Circuit case law was misplaced and that the Sixth Circuit required a different standard for providing a spoliation instruction. The Court determined there was no showing of bad faith in MPD's destruction of the video and audio recordings of defendant's traffic stops. The Court specifically found MPD officer oversight and failure to preserve the recordings did not amount to the officers acting in bad faith. Further, more generally, the Court held that the mass data purge did not establish that any officer with the MPD acted with the specific purpose of rendering the recorded evidence of defendant's traffic stops unusable to the defendant at trial.

The Sixth Circuit has defined spoliation as "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004); *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). Further, the Sixth Circuit "has previously found that it was not an abuse of discretion for the district court, in a criminal case, to refuse to give a spoliation instruction based on the failure to preserve evidence in the absence of bad faith." *United States v. Braswell*, 705 Fed. App'x 528, 535 (6th Cir. 2017 (citing *Boxley*, 373 F.3d at 759). In order to establish bad faith, "a defendant must prove official animus or a conscious effort to suppress exculpatory evidence." *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (internal quotation marks omitted). "Negligence, or even gross negligence, does not rise to the level of bad faith." *United States v. Cline*, 229 F. Supp. 3d 691, 703 (E.D. Tenn. 2017) (citing *Jobson*, 102 F.3d at 218).

Here, there is no showing that this evidence was destroyed in bad faith. As discussed at length in the Court's February 11, 2019 Opinion, [Doc. 506], the recordings were erased not as a result of malice, but routine MPD department policy and during a mass data purge of 33,635 audio

5

and video evidence files from the MPD server, [Doc. 456-3]. Thus, even though the government may have been negligent, "there is no evidence that it acted in bad faith." *Jobson*, 102 F.3d at 218. In this case, there was no evidence that the police acted in bad faith when they failed to preserve the body and dash camera recordings of defendant's traffic stops, the failure to give an adverse inference instruction did not amount to an abuse of discretion and does not warrant a new trial. *See Boxley*, 373 F.3d at 762-63. Accordingly, defendant's motion for a new trial under Rule 33 is DENIED.

### B. Renewed Rule 29 Motions

#### 1. The Court Erred by Denying Defendant's Oral Motion for Judgment of Acquittal on Counts 21, 22, 23, and 24

Under Federal Rule of Criminal Procedure 29, a defendant seeking acquittal based on evidence insufficiency "bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). Pursuant to Rule 29, courts may supplant a jury conviction only if a defendant shows that no reasonable jury could have found that the prosecution proved the essential charge elements beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979). In conducting this analysis, a court does not weigh the evidence anew but views all proof through a prosecution-favorable lens. *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013) (citation omitted). Inference and credibility assessments, too, must favor the verdict. *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006). Thus, a convicted defendant challenging the sufficiency of the evidence is presented with an "uphill battle." *United States v. Wagner*, 382 F.3d 598, 601 (6th Cir. 2004). *See also United States v. Ray*, 803 F.3d 244, 262 (6th Cir. 2015) ("A defendant who claims insufficiency of the evidence bears a very heavy burden").

Defendant seeks a judgment of acquittal on Count 21, possession with intent to distribute five grams or more of methamphetamine; Count 22, of possession of a firearm in furtherance of a drug trafficking crime; Count 23, felon in possession of a firearm; and Count 24, possession with intent to distribute fifty grams or more of methamphetamine. Counts 21, 22, and 23 relate to the April 24, 2017 traffic stop, and Count 24 relates to the May 3, 2017 traffic stop. Defendant contends there is insufficient evidence to sustain a conviction on each count. [Doc. 524].

*Possession with Intent to Distribute 5 Grams of More of Methamphetamine*

As to the possession with intent to distribute five grams or more of methamphetamine charge, the government had to prove, beyond a reasonable doubt, (1) defendant knowingly or intentionally possessed five grams or more of methamphetamine, and (2) the defendant intended to distribute the methamphetamine.

At trial, the government presented testimony from arresting officer Detective Pete Shockley, who testified to finding methamphetamine on defendant's person in his waistband. Further, Detective Chris Blair testified that thirty-six grams of methamphetamine is typically not a user quantity but a resale quantity of methamphetamine. [Doc. 598 at 88].

Detective Shockley testified to finding paraphernalia related to the distribution of drugs including: a set of digital scales with methamphetamine residue, little glass vials - one containing pills, and the other containing methamphetamine residue. [*Id.* at 10]. Further, Detective Shockley testified to finding a money bag containing $11,580.00 in the front passenger seat of the vehicle. Detective Blair testified that the average price for a user quantity of methamphetamine in 2017 was approximately $100. [*Id.* at 82-83]. From the evidence presented, any rational trier of fact could have found indicia of intent to distribute drugs.

7

Viewing the evidence in a light most favorable to the government, the evidence supports the jury's decision to convict defendant of possession with intent to distribute five grams or more of methamphetamine.

*Possession of a Firearm in Furtherance of a Drug Trafficking Crime*

The government had to prove, beyond a reasonable doubt, (1) that the defendant committed the crime charged in Count 21, (2) the defendant, knowingly possessed a firearm, and (3) the possession of the firearm was in furtherance of the drug trafficking crime charged in Count 21.

A conviction under 18 U.S.C §§ 922(g)(1) or 924(c) may be based on either actual or constructive possession of a firearm. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010); *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004). "A weapon is 'actually' possessed if it 'is within the immediate power or control of the individual.'" *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (quoting *United States v. Murphy*, 107 F.3d 1199, 1207-08 (6th Cir. 1997)). "A weapon is 'constructively' possessed if the government can show the defendant 'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id.* (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). Either type of possession may be proven by direct or circumstantial evidence. *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007).

A rational trier of fact could find in this case that defendant indeed had constructive possession of the handgun found in the car of which he was the sole occupant. Detective Shockley testified that the safe was found in the back seat behind the passenger's seat facing the front of the vehicle, and was within arm's length of the driver. [Doc. 598 at 8, 11]. Inside the safe, the officer testified to finding a receipt from a fine that defendant paid, a general sessions court citation with his name, and his wallet. A rational trier of fact could find that all the items found within the safe

8

were possessed by the defendant, and that the safe belonged to the defendant, as he was the sole occupant of the vehicle.

As to the third element, there must be "a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). More specifically:

> In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found. The list of factors is not exclusive, but it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.

*Id.* (citations omitted). In *United States v. Leary*, 422 Fed. App'x 502 (6th Cir. 2011), the Sixth Circuit held that the evidence of the in-furtherance element was insufficient even though the firearm was found in the same closet as the drugs. There, the Court there explained:

> [T]his proximity alone is not enough to establish that the guns were possessed in furtherance of drug trafficking; there must be evidence tending to show a connection between the two. . . . [I]t cannot be true that any time a gun is found near drugs it is necessarily the result of a strategic decision relating to drug activity. Indeed, the guns and the drugs were found in a closet—a storage space, rather than a place from which drugs were sold.

*Id.* at 510-11 (citations and internal quotation marks omitted). The *Leary* Court clarified that the government must "show that 'a defendant used the firearm with greater participation in the commission of the crime or that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence.'" *Id.* (citation omitted).

To prove that the firearms were used in furtherance of a drug trafficking crime, the government presented evidence concerning the location of the firearm—specifically the accessibility of its location in relation to the driver's seat, evidence that the ISSC Model M22, .22

9

caliber semi-automatic handgun was loaded and functional, the firearm was found in the vehicle alongside other items associated with drug dealing, including a digital scale with methamphetamine residue, and small glass vials containing pills and methamphetamine residue, over $11,000 in cash in a money bag, and thirty-six grams of methamphetamine on defendant's person. [Docs. 598, 599 at 3-4].

The government presented evidence that the charged firearm was strategically located so the firearms could be quickly and easily available for use. Detective Shockley testified the safe was in arm's length from the driver's seat and that it could be quickly accessible within seconds with the knowledge of the combination to the safe. [Doc. 598 at 11]. Further, Detective Blair testified that firearms are often possessed by drug dealers in order to protect themselves from robbery or theft of their drugs. [*Id.* at 89].

In light of these facts, a rational trier of fact could conclude beyond a reasonable doubt that the defendant possessed the .22 caliber handgun in furtherance of a drug trafficking crime.

*Felon in Possession of a Firearm*

The government had to prove, beyond a reasonable doubt, (1) the defendant had been convicted of a crime punishable by imprisonment of more than one year, (2) the defendant, following his conviction, knowingly possessed the firearm specified in the Indictment, namely a .22 caliber handgun, and (3) that the firearm previously had been shipped or transported from one state to another.

Here, there had been a stipulation that defendant was a convicted felon. As to the possession element, the above analysis in Count Twenty-Two applies; from the evidence, a rational trier of fact could have concluded defendant had constructive possession of the firearm located in the safe of the car he was driving. Finally, as to the third element, the government presented

testimony from Special Agent Bryan Williams with the Bureau of Alcohol, Tobacco, Firearms and Explosives, that the firearm seized from the safe was manufactured in Austria, distributed in Massachusetts, and it had to have crossed state lines in order to be located in Tennessee during defendant's traffic stop. [Doc. 599 at 3]. The government presented sufficient evidence for a rational juror to conclude defendant possessed a firearm illegally under 18 U.S.C. § 924(c).

*Possession with Intent to Distribute 50 grams of More of Methamphetamine*

As to the possession with intent to distribute fifty grams or more of methamphetamine charge, the government had to prove, beyond a reasonable doubt, (1) defendant knowingly or intentionally possessed fifty grams or more of methamphetamine, and (2) the defendant intended to distribute the methamphetamine.

At trial, Detective Shockley testified to performing a May 3, 2017 traffic stop. Detective Shockley testified that defendant was the sole occupant of the vehicle when he was stopped by police. As part of the traffic stop, Detective Shockley testified to finding the WD-40 can laying in the front passenger side floor, which, when he picked it up, it felt "overly heavy." [Doc. 598 at 41-42]. Detective Shockley testified that, after shaking the can and noticing its contents did not "swish . . . like liquid does," he removed the bottom of the can to reveal a false bottom. [*Id.* at 42]. The container was packed with a bag of approximately one hundred thirteen grams of methamphetamine. [*Id.* at 44].

Detective Chris Blair testified that one hundred and thirteen grams of methamphetamine is typically not a user quantity but a resale quantity of methamphetamine. [*Id.* at 88-89]. The government presented evidence that drug dealers typically make a profit by buying wholesale in larger quantities and subsequently reselling individual smaller quantities. [*Id.* at 86-87]. From the

11

evidence, a rational trier of fact could have concluded defendant possessed with intent to distribute the hundred thirteen grams of methamphetamine.

Defendant's renewed Rule 29 motion fails as to Counts 21, 22, 23, and 24. Accordingly, defendant's motion for a judgment of acquittal under Rule 29 is DENIED.

**III**. **Conclusion**

For the reasons stated above, the defendant's Motion for New Trial, or in the Alternative, For a Judgment of Acquittal, [Doc. 524], is DENIED.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE